May it please the court. Richard Brady on behalf of the appellant, Bellflower Unified School District. And we believe that there are two big issues in this. And there are important issues. And we thank the panel for allowing us to have oral argument before you. The two issues are form over substance and the attorney's fees, and whether the prevailing party is to obtain attorney's fees in this type of a case. There are two complaints. There's a 2005 complaint and 2007 complaint. And the 2005 complaint was resolved by an interim settlement agreement in April of 2005 with respect to all the expedited issues. And this is, first of all, this is a case, Julie Walhovd is the appellee. She's the student, the special ed student. It involves her 10th grade year and her 11th grade year. And then she moved to Wisconsin between her 11th grade year and her 12th grade year. This case involves the 10th grade year and the 11th grade year. The allegations in the 2005 complaint arise out of a suspension of Julie during her 10th grade year regarding a fire and the suspension and then during that suspension, whether the suspension was proper, and all of these matters. There was the 2005 complaint that was filed relating to that. It was resolved in an interim settlement agreement. Our contention is that it resolved all the issues. Did the district court find that the interim settlement agreement had resolved everything? No. The district court found that the ALJ had made an error in deciding that it had. And the district judge remanded that to the ALJ, it turns out the same ALJ, who then subsequently decided there was no compensatory damages. Let me go to a question of jurisdiction. Yes. Do we have jurisdiction over this case? Yes, you do. And how do we have it? Which decision do we have jurisdiction from? Both. Both. No, what I'm going to is, it went to the district court. The district court remanded a certain portion of it back to the ALJ. The ALJ then made a decision. Yes. Excuse me, and you've broken it into two complaints, the 2005 and the 2007. Yes. I want to make sure I'm following. So when you say it was remanded, the 2005 that you thought was by settlement, that's the one that was remanded. It's a little more complicated than that, because they were consolidated for the hearing. And it was after the hearing, the 2007 complaint was in February of 2007. It was consolidated with the 2005, and then heard in April and May of 2007. A decision then was reached. Which one was remanded? The issue of compensatory damage relating to the 2005 complaint. OK. So it's remanded, the ALJ makes a decision. Yes. Did you appeal that decision to the district court? No one appealed that decision until the judge entered a final judgment in August of 2011. That's where we've appealed that. 2011, wasn't that on the fees? It was a judgment that was then the final act in that case. Was it on the fees? It related to a motion for fees under the IDAA. It did relate to fees, yes. Did that decision specifically deal with matters that had been remanded to the ALJ? It did not. I'm sorry. It did mention them. If you have the opportunity. Real question I have is, it gets remanded to the ALJ. The ALJ ultimately makes a decision. You don't appeal from that. So you never bring that issue back to the district court. That is correct. How do we have jurisdiction to hear an argument that's never been appealed to the district court? It's not the ALJ's decision that we're here on at all. We're here on the judgment that was entered by the district court that was the final act or the final thing that occurred in that whole case. What's the Supreme Court said relative to separating the merits appeal from the appeal on the attorney's fees? In other words, if there's a timely merits decision, but not a final decision on the fees, when does the time for filing an appeal run from? I'm not sure that those decisions would apply to this case, because the attorney's fees are very much they're tied in. They're linked in. It's the same statutes, 1415 of Code Title 20. Is that what the Buttigieg case from the Supreme Court said? I'm sorry? The Buttigieg case from the Supreme Court? I'm sorry, I'm not aware of that case. But what happened here was we had brought the first appeal, and the panel of the Ninth Circuit dismissed it. And in its dismissal, it said, the subsequent resolution on remand from the district court to the administrative law judge, JL Passwork, of a damage issue is irrelevant to the question of our jurisdiction. So in this case, the law of the case says that the resolution of that remanded matter does not affect the jurisdiction. And the other order on May 9th said that it says it was prior to the hearing on remand and before all claims were settled in the district court, the court of appeals in the first appeal was looking for something that the district court was going to do in the future. And the remand decision was before they issued this order. They were still looking for something else to happen in the district court. That was the final judgment. The plaintiff, Julie, submitted a judgment. The court issued a judgment. And that's what we're appealing, the judgment. The judgment deals with fees, as I remember. I thought the underlying merits that had been in part referred back to the ALJ wasn't part of the district court's judgment that you appealed from. Well, our claim is that the first judgment did not become, well, we thought it had become final until the Ninth Circuit said it did not become final. We thought it had become final. But then they're waiting for something else for the district court to happen. Then this is the only thing that happened in the district court that brought finality. So there was nothing else to do but to execute. I guess the question would be, as certain related matters get remanded back to the ALJ, the case is still before the district court then, right? I believe so. And so the ALJ makes decisions, at least partially, on the merits that you're dealing with in this case. But you never appealed that back to the district court to ask that court to once again review the ALJ's determination? We won. We won the ALJ. It was not for us to appeal. We won the case in front of the ALJ. Then it was then ripe, if you will, for the district judge to then finally do the judgment and bring finality to the entire case under Katelyn. Why wouldn't you have brought it back to the district court then and asked them for a final judgment, either on the ALJ or with exceptions to the ALJ's determination? Well, our impression was that it was on hold for the attorney's fees were on hold until these matters were done. And then the plaintiff brought her motion for fees. And then the judgment was then entered. And that brought the finality to the entire matter. If it were merely filing a cost bill on a basis of winning, and it's just a cost bill, that's different than here. It's a part of the statute. But I think you're probably wrong. I think the Supreme Court in the Ninth Circuit has said that the time within which to file an appeal is not delayed by the pendency of an attorney's fee application. I'll just caution. I think you're quite wrong on that. Yes. Inclined to agree, but I just want to make sure. I'm looking at the order that our panel entered. You said it's law of the case. And what about it is, you say, the statement that the subsequent resolution on remand from the district court to ALJ Pacewark of a damage issue is irrelevant to the question of our jurisdiction. What was that referring to? By then, had the ALJ issued? Yes, had fully. But you weren't appealing from that. We weren't appealing from that, no, not at all. Right, so that's why they, that's all they said. What they were doing was, it was not a final judgment. Because what you had noticed an appeal from was a remand order to the ALJ. So the ALJ was still, on the one that you had brought to the panel, it was a non-final judgment on its face. The fact that the ALJ had then, in the interval, issued a ruling, that would have gone to the district court if you had an appeal from that. So it's not relevant to the question of their jurisdiction at that point. Because at the time that they wrote that, there would not have been a final judgment from the district court. Well, it was about a year earlier. The ALJ issued its decision on the remand in June of 2010. Well, that may be. But what you had noticed an appeal from was before then. That's right. So a subsequent development, which has not then gone back to the district court, doesn't suddenly create jurisdiction at that time. So in any event, we'll have to interpret that. You can't very well help us much on that. All right. The issue of the, if we get past the jurisdiction question. Let's talk about the attorney fees, because you. Yeah, about the attorney fees. The 2005 complaint didn't result in any benefit at all to Julie. The 2005 complaint was settled, for the most part, through the interim settlement agreement in April of 2005. That was not a judicially sanctioned award. Therefore, there's no attorney's fees under the Seattle case. But the district court found the opposite. So we would have to overturn its decision, finding that the applicant was the prevailing party. You would have to overturn his decision as to the prevailing party. What would the standard of review be? Is that a factual issue as to which we should afford deference? Is it a factual issue, whether she was prevailing? I think it depends on your determination as to whether she actually did win a substantial, if there was a benefit, and if there was a material alteration in the legal relationship. Neither the 2005 nor the 2007 complaints did those things. The 2007 complaint resulted in, well, the 2007 complaint was filed after she had already moved to Wisconsin. In Wisconsin, in September of 2006, after she had moved, and before the 2007 complaint had been filed. Did she get the privately funded vocational assessment? She got that from Wisconsin. She got a vocational assessment. No, but didn't the court order that she receive compensation for that? I believe it was only if it wasn't already being provided. Didn't the district court order that a Lend-A-Moot bill be paid? Oh, yeah, the IAE issue. Didn't the district court also order that there be 10 hours of counseling service that would provide her? But that was provided, irrespective of the 2007. It was already being provided by Wisconsin, irrespective of the 2007 complaint. But the district court ordered it, didn't it? It did, but it had already been provided. It was already being provided before the complaint. This has gone on so long. It, of course, had been provided a million years ago. But didn't it order you to reimburse them for it? No, I don't believe so. I believe that we were to provide it unless it was already being provided. And so there was nothing else for us to do. Now, the reimbursement of the IAE, the Lend-A-Moot bill, that was ordered to be done. But we haven't been presented with a bill at all. She hasn't received payment of it. So you've got a judicially sanctioned order that you pay at least something? That we pay something, but I still have the issue. My time has run out. But we still have the issue as to whether there was a disagreement as to it and whether that has to be expressed or whether it can just be a private disagreement. We say that it should be. Anything about attorney's fees? I'm sorry? You want to talk about the amount of attorney's fees? Zero. She should get nothing. There was no benefit, either out of the 2005 complaint or the 2007 complaint, that the attorney's fees should be nothing. Thank you, Your Honor. Thank you. May it please the Court. Good. Almost good afternoon. I am Tanya Whiteleather. And I represent Julie Walhood, who is the appellee and respondent in this matter. First, I would like to point out that there was one case, one administrative due process case. It was filed in 2005. When we filed it, we raised issues going back to 2002 as the record reflects. Looking back to the administrative due process decision, it addresses that the case reflects on ER 208, issues going back to 2002, which was the statute of limitations at that time. The hearing office, as is its practice still today in California, looked at the issues, realized that one of our issues had to do with the immediate removal of a child, which requires one immediate, very brief hearing, one to two days, on what they call an expedited issue. That was set aside, bifurcated, if you will, and heard, started to be heard. We didn't go through a hearing. We did a settlement. We did not waive any other rights. We did not waive any other issues. And we didn't have a hearing on the issues regarding 2002 at the time of that settlement agreement. We did, for various and sundry numbers of reasons, we had continuances. OAH had a very bizarre scheduling procedure where it would give you a date and the parties would come to the table. We had some assessments going on. We did finally get heard in 2007. That matter was we did prevail. One of the things this Court is very well aware of is there is no clear guideline for how the district court is to determine exactly fees. Hensley v. Eckerhart looks at success. If you look at the decision, the way the decision in 2007 was written, there were basically four issues laid out. And on two of those, we prevailed. When the judge finished at the end with prevailing party, she did it a little bit differently and separated them into about 10 different issues. Very confusing. We also had addressed five years from 2002 forward. And we prevailed in establishing a denial of faith for two of those five years. We did obtain a prevailing party status in the due process matter. We did file an appeal to the district court, as did the district. And in our motion for fees, argued that we both almost come away with the same thing. The district courts affirmed most of the due process hearing with a remand on a small issue that we did not prevail on. So we put in a lot of time. My client put in a lot of time in this matter and prevailed on defending the district's attempt to overturn in the district court. And that's where we had come up with that, along with the two out of five years, looking at a reasonable amount of fees as being approximately half of what had been incurred. I just want to make sure I touch all the eggs. Did the district court specifically discuss under Hensley how much success? No, I don't believe he said exactly how much. Because Hensley looks to success. We've got the Parks v. Anaheim case where even a small success can award, entitle a party to fees. Then you look to the amount of success. He did look at the results obtained, though, correct? I beg your pardon? He did mention the results obtained. I believe so. But we had gone through, again, looking at the number of years involved, looking at the number of issues identified by the administrative law judge. We felt we had done well on this. We didn't prevail on all issues. What we did prevail for the student got some transition-appropriate transition services that the district was obligated to provide, unless, as happened in the interim, she did obtain those from Wisconsin because we were waiting many years for that. We got the right to reimbursement. We got the right to a finding that, in fact, what had been done for those years was inappropriate. And we had prevailed. Your fee request was cut in half. We asked for that, Your Honor. We felt it was reasonable and fair to go to the court and say, here is the total fees incurred. And the court did find the billing statement to be fair and clear, and did find that the rates were appropriate, and awarded what was requested, which was half of that. In the work that you do under the IDEA Act, you're only, in the real world, your only compensation comes from fee awards, is that right? In my office, in my particular office, I do get a small payment from clients. But most of it comes from the local educational agencies when we prevail. I just want to be clear again. This is one administrative due process case. It's not three separate cases. When the 2007, when we went into 2007,  we still had some issues. And because we had gone so long, we were allowed to raise a new complaint and to consolidate that. So it's still all one case. I think we have your answer. We have it well in hand. OK. I don't believe that we did anything improper. I regularly file motions for attorney's fees, providing declarations from my counterparts, the individuals who provided declarations. One of them has far more experience than I, and I did not ask for her rate. I have been certified at the rate provided. Again, I think the court, the district court, looked at what we had presented and found it to be reasonable. We have that. Thank you very much. Thank you. Thank you. Thank you, counsel.
judges: Gwin, Pregerson, Fisher